# PETITION OF
# U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR INSTURCTIONS IN THE ADMINISTRATION OF A TRUST PURSUANT TO MINN STAT. §501B.16

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF RAMSEY | SECOND JUDICIAL DISTRICT |
| | Case Type: Other |
| In the matter of the Trusteeship Created by the Alaska Industrial Development and Export Authority | File No.:_____ |

PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF A TRUST PURSUANT TO MINN. STAT. § 501B.16

TO THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT:

Petitioner, U.S. Bank National Association, as trustee for the above-described trust estate, by and through its undersigned attorneys, petitions the Court as follows:

1. Petitioner U.S. Bank National Association, as successor trustee ("U.S. Bank" or the "Trustee"), is a national banking association with its principal office corporate trust office in St. Paul, Minnesota.

2. On or about August 1, 2006, the Alaska Industrial Development and Export Authority (the "Authority") issued its Anchorage Industrial Development and Export Authority Sports Facility Revenue Bonds (Anchorage Sportsplex Project), Tax Exempt Series 2006A and its Alaska Industrial Development and Export Authority Sports Facility Revenue Bonds (Anchorage Sportsplex Project), Taxable Series 2006B (together, the "Bonds").

3. The Bonds were issued pursuant to a Trust Indenture (the "Indenture"), dated as of August 1, 2006, between the Authority and Wells Fargo Bank, National Association ("Wells Fargo"). U.S. Bank is the successor trustee to Wells Fargo under the Indenture. A true and correct copy of the Indenture is attached hereto as Exhibit A.[1]

4. Pursuant to a Loan Agreement (the "Loan Agreement"), dated as of August 1, 2006, between the Authority and Anchorage Sportsplex, Inc. ("ASI"), the Authority loaned proceeds of the Bonds to ASI for the purpose of providing funds necessary for acquiring, developing, and constructing a multi-use sports facility with an inflatable dome located on leasehold property to be owned and by ASI. A true and correct copy of the Loan Agreement is attached hereto as Exhibit C.

5. As evidence of ASI's obligations under the Loan Agreement, ASI executed and delivered a Promissory Note (the "Note"), dated August 1, 2006, payable directly to the Trustee in the original principal amount of $11,510,000. Amounts payable under the terms of the Note are equal to amounts payable to the Trustee on the Bonds. A true and correct copy of the Note is attached hereto as Exhibit D.

6. Simultaneously with execution and delivery of the Indenture and the Loan Agreement, the Authority pledged, assigned, and conveyed to the Trustee substantially all of the

---

[1] Pursuant to an Instrument of Resignation, Appointment and Acceptance, dated as of October 21, 2009, between and among the Authority, Wells Fargo, and U.S. Bank, Wells Fargo resigned as indenture trustee and U.S. Bank accepted appointment as successor indenture trustee. In its capacity as successor indenture trustee, U.S. Bank holds all rights, interests, and powers originally granted to Wells Fargo, as indenture trustee. Wells Fargo, as indenture trustee, and U.S. Bank, as successor indenture trustee, are referred to together as the "Trustee." A true and correct copy of this Instrument is attached hereto as Exhibit B.

Authority's rights and interests under the Loan Agreement and the Note, in trust, as part of the security for the payment of the Bonds. See Loan Agreement at § 3(d); Note; Indenture at Granting Clause A and § 5.01.

7. Amounts payable under the terms of the Loan Agreement are equal to amounts payable to the Trustee on the Bonds, plus all fees and expenses of the Trustee. See Loan Agreement at Recitals and § 5.

8. On or about August 1, 2006, the Anchorage Community Development, LLC ("ACD") entered into a Land Lease (the "Lease") with ASI, pursuant to ACD leased certain real property to ASI for a term of 50 years. ASI prepaid the rent due on the Lease in the amount of $1,200,000. See Lease at Articles II and III. A true and correct copy of the Lease is attached hereto as Exhibit E.

9. Pursuant to a Leasehold Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the "Deed of Trust"), dated as of August 1, 2006, ASI granted the Trustee liens on and security interests in substantially all of ASI's property. See Deed of Trust at Granting Clauses. A true and correct copy of the Deed of Trust is attached hereto as Exhibit F.

10. ASI is an entity created and controlled by GraceAlaska a/k/a Grace Alaska, Inc. ("GraceAlaska") and Grace Community Church, Inc. d/b/a ChangePoint ("ChangePoint" and, together with GraceAlaska, the "Guarantors"). Pursuant to a Guaranty Agreement (the "Guaranty"), dated as of August 1, 2006, the Guarantors guaranteed to the Trustee for the benefit of bondholders certain obligations of ASI. Without limitation, the Guarantors jointly and severally guaranteed to the Trustee the full and prompt payment of any Operating Deficit,

-3-

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 4 of 14

defined in the Guaranty to include certain principal and interest payments on the Bonds. See Guaranty at § 3.2. A true and correct copy of the Guaranty is attached hereto as Exhibit G.

11. Section 6.09 of the Indenture provides that, if ASI fails to pay amounts due and payable under the terms of the Loan Agreement or the Indenture, "the Trustee shall draw on the Guaranty and, unless otherwise directed by the Indenture, shall deposit such amounts in the Revenue Fund of the Bond Fund and immediately apply such amounts in accordance with Section 5.02 of this Indenture." See Indenture at § 5.02.

12. The Combined Audited Financial Statements (the "Audited Statements") of ChangePoint treat ChangePoint, ASI, GraceAlaska, and ACD combine their financial statements based on their common control and/or significant economic relationships.

13. The Audited Statements consolidate ACD and GraceAlaska, as the 99.9% member and managing member of ACD, for accounting purposes.

14. The Audited Statements treat obligations under the Loan Agreement, the Note, and the Bonds as obligations of the consolidated group.

15. ChangePoint, GraceAlaska, ACD, and ASI have conducted numerous and substantial intercompany transactions, including without limitation: ASI's prepayment of $1,200,000 to ACD for a fifty year ground lease; ChangePoint's guarantee of ASI's revolving line of credit; payment of common or shared operating and payroll expenses; ChangePoint's and GraceAlaska's guarantee of certain obligations of ASI relating to the Bonds and the Loan Agreement; and ACD's joinder in the Guaranty.

-4-

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 5 of 14

16. Under ASI's bylaws, the directors of ASI are appointed "at the discretion of GraceAlaska and ... hold office until their successor(s) have been appointed." A true and correct copy of ASI's Amended and Restated Bylaws is attached hereto as Exhibit H.

17. On August 16, 2006, GraceAlaska and ASI entered into a Management Agreement (the "Management Agreement"), pursuant to which GraceAlaska undertook to provide management services for ASI including, without limitation, operation of the ASI facilities, financial and accounting services, and retention of legal counsel. A true and correct copy of the Management Agreement is attached hereto as Exhibit I.

18. The Independent Accountants' Compilation Report for ASI, delivered in conjunction with issuance of the Bonds, further states the annual plan and budget for ASI must be approved by GraceAlaska's board.

19. ChangePoint, GraceAlaska, ACD, and ASI have numerous common officers and directors.

20. ASI's Form 990 filing with the Internal Revenue Service for the years 2005-07 (the only years for which the Trustee has received such forms), identify ChangePoint, GraceAlaska, and ACD as related organizations and reference payment of salary and benefits to an officer and director of ChangePoint (referred to as the "controlling organization").

21. GraceAlaska's Form 990 filings with the Internal Revenue Service for the years 2005-07 (the only years for which the Trustee has received such forms) refer to ASI as commonly controlled; refer to ChangePoint, ASI, and ACD as related organizations; and reference payments of salaries and benefits to three individuals identified as officers and/or

-5-

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 6 of 14

directors of ChangePointe (referred to as a "related organization" and as the "parent organization").

22. On July 22, 2009, Wells Fargo demanded payment from the Guarantors on account of their obligations under the Guaranty. A true and correct copy of this letter is attached hereto as Exhibit J.

23. By letter dated February 18, 2010, the Trustee further advised the Guarantors that they were in default of their obligations under the Guaranty and demanded immediate payment. A true and correct copy of this letter is attached hereto as Exhibit K.

24. By letter dated March 15, 2010, the Guarantors advised the Trustee that the Guarantors believed their obligations under the Guaranty terminated after the calendar year in which an Event of Default occurred and asked for the Trustee's position with regard to their obligations. The Guarantors did not deny that they were obligated for payments due and owing for the period 2006 to 2010, but neither did they make payment. A true and correct copy of this letter is attached hereto as Exhibit L.

25. By letter dated March 23, 2010, the Trustee advised the Guarantors that the Guaranty remained in full force and effect unless the Trustee elected to accelerate the Borrower's obligations and that, because the Borrower's obligations had not been accelerated, the Guarantors remained liable until the final payment of all principal and interest due on the Bonds. A true and correct copy of this letter is attached hereto as Exhibit M.

26. On April 22, 2010, the Trustee sent the Guarantors a letter supplementing the Trustee's previous demands and confirming that the Guarantors remain fully obligated for (a) all

-6-

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 7 of 14

amounts now due and payable under the Guaranty; (b) all amounts becoming due under the Guaranty until the final payment of all principal and interest due on the Bonds; (c) interest on amounts owed by the Guarantors, accruing at the rate of percent (8%) per annum; and (d) all costs and expenses incurred by the Trustee in connection with enforcement of the Guaranty. A true and correct copy of this letter, making demand for payment of all such amounts, is attached hereto as Exhibit N.

27. As more fully set forth below, the Trustee brings this action for the purpose of construing the terms of the trust, determining the extent of the trust *res* and the interests of the trustee and its beneficiaries in the trust, and seeking instruction with regard to matters relating to the administration of the trust.

28. This Court has jurisdiction over the administration of the trust estate created by the Indenture because the Trustee's principal place of its corporate trust business, and the place of administration of the trust, is in St. Paul, Minnesota. Minn. Stat. § 501B.17; *In re Florance*, 360 N.W.2d 626 (Minn. 1985).

29. It is the Trustee's position that the Guaranty remains in full force and effect unless and until the Trustee elects to accelerate ASI's obligations under the Loan Agreement and the Note.

30. The Trustee has not accelerated ASI's obligations under the Loan Agreement and the Note.

31. Because ASI's obligations have not been accelerated, it is the Trustee's position that the Guarantors remain liable for all amounts due and payable under the Guaranty until the final payment of all principal and interest due on the Bonds. See Guaranty at § 3.2(2).

32. The Indenture and the Loan Agreement, executed in conjunction with the Guaranty, confirm that acceleration is one of several discretionary remedies available to the Trustee, and that acceleration cannot occur without express exercise of that right by the Trustee. See Indenture at § 7.01; Loan Agreement at § 18(a). Although the Trustee may be directed to accelerate at the written request of the Holders of not less than a majority in aggregate principal amount of the Bonds at the time Outstanding, see Indenture at § 7.01, the Trustee has received no such request.

33. The Guarantors' obligations are absolute and unconditional. See Guaranty at § 3.5. The Guaranty expressly states that such obligations shall not be affected by, among other things, the Trustee's failure to enforce any right or remedy, bankruptcy of ASI, or transfer of substantially all of ASI's assets. See Guaranty at § 3.5(7-9, 11).

34. It is the Trustee's position that the implied covenant of good faith and fair dealing does not support the Guarantors' assertion that ASI's obligations are deemed to have been accelerated and that, therefore, the Guarantors have no obligations beyond calendar year 2010.

35. Because the implied covenant of good faith and fair dealing cannot be used to deprive the Trustee of its contractual rights, and because the Guaranty treats acceleration as a wholly discretionary option, this covenant does not limit the Trustee's right or the Guarantors' obligations under the Guaranty. Similarly, this covenant cannot obligate the Trustee to take any

-8-

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 9 of 14

action for the benefit of the Guarantors that is inconsistent with the rights held by the Trustee for the benefit of the trust beneficiaries.

36. It is the Trustee's position that the Guarantors' obligations under the Guarantee are not reduced as a result of payments made unilaterally by the Guarantors to third parties and/or by the Guarantors' alleged setoff of amounts owed by ASI to the Guarantors. Payment of certain expenses selected by the Guarantors, including taxes or utilities for which the Guarantors or their affiliates may be principally liable, does not satisfy the Guarantors' obligations to the Trustee.

37. Under the terms of the Guaranty, the Guarantors have no right of setoff and no right to reduce their obligations under the Guaranty by making payments to third parties. Restated, the Guarantors may not take credits for payments to third parties or forgiveness of amounts allegedly owed by ASI to the Guarantors.

38. The payment obligations of the Guarantors are owed, in the first instance, to the Trustee, and the Guaranty "runs for the sole and exclusive benefit of the Trustee on behalf of the Bondholders." See Guaranty at § 7.9.

39. The Guaranty provides that the obligation to the Trustee is for "any Operating Deficit." Guaranty at § 3.2. The obligation to ASI, by contrast, is for payment of "any *other* Operating Deficits *not required to be paid to the Trustee* ....." Id. Section 3.2 of the Guaranty further provides that payments on account of the Guaranty shall be paid to the Trustee and deposited into the Revenue Account for application in accordance with the priorities set forth in section 5.02 of the Indenture (under the terms of which payments to the Borrower are a *sixth* priority).

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 10 of 14

40. The Guarantors have failed and refused to make any payments to the Trustee in accordance with section 3.2 of the Guaranty.

41. Under the terms of the Guaranty, the Guarantors remain liable for the full amount of the Operating Deficits including the following:

   (a) all Operating Deficits including principal and interest now due and payable on the Bonds;

   (b) unless and until the Trustee expressly accelerates the amounts due on the Bonds, all amounts becoming due under the Guaranty until the final payment of all principal and interest due on the Bonds;

   (c) interest on amounts owed by the Guarantors, accruing at the rate of percent (8%) per annum, see Guaranty at § 3.3; and

   (d) all costs and expenses incurred by the Trustee in connection with enforcement of the Guaranty, id.

42. The Guarantors have acknowledged that they control ACD and ASI, and the Guarantors have exercised such control with regard to, *inter alia*, ASI's operations and finances.

WHEREFORE, pursuant to the provisions of Minn. Stat. § 501B.16 and all other applicable law, the Trustee respectfully requests that this Court:

A. Make and enter herein an Order designating the time and place when the respective parties in interest may be heard upon the matters set forth in this Petition, and that notice of the hearing be served in the manner specified in the accompanying Order and as provided by Minn. Stat. § 501B.18.

B. Undertake to represent all parties in interest who are unascertained or not in being, or who are minors or incapacitated, pursuant to the provisions of Minn. Stat. § 501B.19.

C. At such designated time and place this Court make a further Order as follows:

i. Determining the scope and extent of the trust *res*, including *inter alia*, the interests of the Trustee and its beneficiaries under the Guaranty and the obligations of the Guarantors or others to the trust;

ii. Finding that the Guaranty remains in full force and effect unless and until the Trustee elects to accelerate ASI's obligations under the Loan Agreement and the Note, and that no such acceleration has yet occurred;

iii. Finding that the Guarantors' obligations under the Guarantee are not reduced as a result of payments made unilaterally by the Guarantors to third parties and/or by the Guarantors' alleged setoff of amounts owed by ASI to the Guarantors;

iv. Finding that the Trustee's actions have been in best interests of the holders of the Bonds and satisfies the Trustee's fiduciary duty to the holders of the Bonds; and

v. Granting such other and further relief as the Court may deem lawful, just, and proper.

Dated: May 27, 2010

**DORSEY & WHITNEY LLP**

By: /s/ Patrick J. McLaughlin
Patrick J. McLaughlin
Attorney Reg. No. 71080
Todd C. Pearson
Attorney Reg. No. 230935
220 South Sixth Street
Minneapolis, MN 55402
Telephone (612) 340-2600

Attorneys for the Trustee

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed under Minn. Stat. § 549.211.

DORSEY & WHITNEY LLP

_____
Todd C. Pearson

Case 3:10-cv-00262-HRH   Document 1-1   Filed 07/14/10   Page 13 of 14

# TABLE OF CONTENTS

A. Trust Indenture dated August 1, 2006
B. None
C. Loan Agreement dated August 1, 2006
D. Promissory Note dated August 1, 2006 ($11,510,000)
E. Land Lease dated August 1, 2006
F. Deed of Trust dated August 1, 2006
G. Guaranty Agreement dated August 1, 2006
H. ASI Bylaws (not yet available)
I. Management Agreement dated August 16, 2006
J. Wells Fargo letter to GraceAlaska and ChangePoint dated July 22, 2009
K. U.S. Bank letter to GraceAlaska and ChangePoint dated February 18, 2010
L. Kathryn Black letter to E. Schaffer dated March 15, 2010
M. E. Schaffer letter to Kathryn Black dated March 23, 2010
N. U.S. Bank letter to GraceAlaska and ChangePoint dated April 22, 2010